# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SPRINGBOARDS TO EDUCATION, INC. | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.: _____ |
| SCHOLASTIC BOOK | § | |
| FAIRS, INC., SCHOLASTIC | § | |
| CORPORATION, and HOUGHTON | § | |
| MIFFLIN HARCOURT PUBLISHING CO. | § | JURY TRIAL DEMANDED |
| Defendants. | § | |
| | § | |

## ORIGINAL COMPLAINT

Springboards to Education, Inc. ("Springboard," "Springboards," or "Plaintiff") for

its claims against Defendants: Scholastic Book Fairs, Inc. ("SBF"), Scholastic Corporation

("Scholastic"), and Houghton Mifflin Harcourt Publishing Co. ("HMH") (collectively

"Defendants"), respectfully alleges as follows:

## NATURE OF ACTION

1.      This is an action at law and in equity for: trademark counterfeiting; trademark

infringement; trademark dilution; and unfair competition arising from Defendants'

unauthorized use of Springboard's federally registered trademark.  Springboard is the

exclusive owner of all the trademark rights in and to the Springboards Trademarks (as

referenced and outlined below and shown in Exhibit A, the "Trademarks") for various goods

and services related to the educational field.

2.     Springboard offers for sale reading programs and related educational products.  The Trademarks are uniquely associated with the Springboard brand and have come to symbolize the exceptional quality that consumers can expect from Springboard as the source of such products and services.  Accordingly, Springboard enjoys strong consumer loyalty, recognition, and goodwill in the educational field and its related marketplace.

3.     Springboard's claims in the present action arise from Defendants' unauthorized manufacture, production, distribution, advertisement, promotion, marketing, offering for sale, and/or sale of educational products and services bearing the Trademarks. Upon information and belief, Defendants are major infringers of the Trademarks: Defendants both sell and distribute their counterfeit versions directly to the consuming public, on a large scale, as to confuse the consumers as the origin of the infringing products and services.

4.     Defendants are not connected or affiliated with Springboard in any way, nor do Defendants have permission from Springboard to use any of its Trademarks or any other intellectual property belonging to Springboard.  Rather, Defendants are blatantly exploiting the Trademarks for their own commercial gain, intending to confuse and deceive the public by drawing on Springboard's goodwill in the marketplace.  By offering for sale and

distributing the infringing products and services, Defendants intend to, are likely to, and do

cause confusion and deceive consumers and the public regarding the source of Defendants'

merchandise, all to the detriment of Springboard.

## THE PARTIES

5.      Springboards to Education, Inc. is a corporation organized and existing under

the laws of the State of Texas, having its principal place of business at 3802 South Highway

281, Edinburg, Texas 78539.

6.      Scholastic Book Fairs, Inc. is a corporation duly organized and existing under

the laws of the State of Florida and, upon information and belief, maintains a principal place

of business at 1080 Greenwood Boulevard, Lake Mary, Florida, 32746.   Scholastic Book

Fairs, Inc. is a subsidiary of Scholastic Corporation.   SBF sells and distributes its publications

in the Northern District of Texas and throughout the United States, including infringing

publications and materials at issue in which Plaintiff's property is/are unlawfully reproduced.

At all times pertinent to the allegations herein, SBF acted through and in concert with its

various imprints, divisions, partners, subsidiaries, predecessors, and affiliates.

7.      Scholastic Corporation is a corporation duly organized and existing under the

laws of the State of Delaware and, upon information and belief, maintains a principal place

of business at 557 Broadway, New York, New York, 10012.

8.      Houghton Mifflin Harcourt Publishing Co. is a corporation duly organized and

existing under the laws of the State of Massachusetts and does business at 2700 La Frontera

Boulevard, Round Rock, Texas 78681 and, upon information and belief, maintains a

principal place of business at 222 Berkeley Street, Boston, Massachusetts, 02116.   HMH

sells and distributes its publications in the Northern District of Texas and throughout the

United States, including infringing publications and materials at issue in which Plaintiff's

property is/are unlawfully reproduced. At all times pertinent to the allegations herein, HMH

acted through and in concert with its various imprints, divisions, partners, subsidiaries,

predecessors, and affiliates.

## JURISDICTION AND VENUE

9.      Springboards files this action against Defendants for trademark counterfeiting,

trademark infringement, and trademark dilution under the Lanham (Trademark) Act of 1946,

15 U.S.C. § 1051 *et seq*. (the "Lanham Act"), and related claims of unfair competition under

the statutory and common law of the State of Texas. This Court has subject matter jurisdiction over the trademark claims under 28 U.S.C. §§ 1331 and 1338(a).

10.     This U.S. District Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiffs complain under 18 U.S.C. § 1961, *et seq*. (civil-RICO); and are related to the same transactions or occurrences and implicate the same questions of fact and related questions of law.

11.     This Court has diversity jurisdiction because there is complete diversity among parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a), 1441(a). Complete diversity exists in this case.

12.     This Court has supplemental jurisdiction over the state law claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

13.     This Court has personal jurisdiction over Defendants because Defendants transact a sufficient amount of business both within the state of Texas and within this District.

14.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims stated herein occurred in this district.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### The Springboard Trademarks

15.     Springboard designs, markets, and sells reading and related products under the Springboard brand and its associated Trademarks, including, but not limited to, motivational products that the purchaser awards to students upon achievement of the requisite thresholds.

16.     Springboard is the owner of the entire right, title, and interest in and to various trademark registrations and applications for the Springboard brand for a variety of goods and services, including, but not limited to, the following U.S. trademark registrations (all certificates attached in Exhibit A):   Millionaire Reader® (U.S. Reg. No. 4,080,513); Million Dollar Reader® (U.S. Reg. No. 4,291,796); Millionaire's Reading Club® (U.S. Reg. No. 4,162,765); and Read A Million Words® (U.S. Reg. No. 3,955,345).

17.     The foregoing registrations are valid, subsisting, and in full force and effect.

18.     Additionally, Springboard has common law trademark rights in the Springboard unregistered trademarks for use in connection with products and services in the educational field and other related fields.

19.     Springboard began offering to sell, marketing, and selling products and services bearing the Springboard Trademarks at least as early as 2005.

20.     Springboard maintains strict quality control standards for all goods and services under the Springboard brand and Trademarks.

21.     Each year, Springboard spends substantial resources in marketing and promoting the Springboard brand and Trademarks, and sells hundreds of thousands of dollars of goods and services bearing the Springboard brand and Trademarks.

22.     As a result of Springboard's exclusive and extensive use and promotion of the Springboard brand and Trademarks for many years, the marks have acquired enormous value and recognition in the United States and elsewhere throughout the world, all of which inures to the benefit of Springboard. Consumers, potential customers, and other members of the public not only associate the Springboard brand and Trademarks with exceptional materials, style, and workmanship approved by Springboard, but also recognize that goods and services bearing the Springboard brand and Trademarks originate exclusively with Springboard. Accordingly, the Springboard brand and Trademarks are symbols of Springboard's quality, reputation, and goodwill and serve as instant source identifiers for Springboard's products.

23.     Since at least 2006, Scholastic has sold to Texas schools what it calls "Read 180," Scholastic's *infringing* version of Plaintiff's intellectual property.  On or about May 29, 2015, Scholastic divested itself of "Read 180" by conveying that product/program to HMH.  Since May

2015, HMH has sold to Texas schools both "Read 180" and later what it calls "Read 180

Universal" HMH's *infringing* version of Plaintiff's intellectual property.

24.     By law, there can be no ownership of a trademark in any term that has not been

used exclusively by the would-be owner.  That is because the purpose of trademarks is to identify

the source of the goods, and if the term is also used by unrelated sources, no trademark exists.

This is true no matter whether the term is inherently distinctive or not.  If the term is used non-

exclusively, it cannot be a trademark.  Therefore, if an applicant knows, after reasonable inquiry,

that a term has also been used continuously by one or more competitors for a significant time, the

applicant cannot honestly swear that the applicant is the owner of the term and that no other person

has any rights to the term.  This duty is imposed on the applicant because the government wants

to keep junk trademarks out of its registries.  Willful ignorance and unrealistic assessments are

not allowed.   Trademark rights arise from exclusive continuous use, not from scattershot

trademark applications.

25.     The complained-of unlawful activities are ongoing.  The doctrine of continuing

tort or injury applies to the claims here except for the patent-false-marking claims.  Several of the

unlawful activities complained of here were first perpetrated in 2007, their discovery, however

would be hampered and concealed by the Defendants, who have no incentive or obligation to

make public their records and evidence of their knowledge and intrusion into Plaintiff's business and proprietary property, products, and services. Others of the unlawful activities were first perpetrated more than four years and less than ten years ago, but are continuations of an ongoing pattern of unlawful activity. Therefore, there is no time bar to this action other than the outer limit for patent false marking.

26.    Plaintiff's standing to bring claims under the federal Lanham Act, and state unfair-competition and trade-practices law, is established by the business-competitor, distributor, or business-customer relationships among the parties, by present activity, which could constitute infringement, or concrete steps taken with the intent to conduct such activity, as set forth in detail herein.

27.    Defendants knowingly engaged in a scheme to intentionally defraud consumers and the public through unauthorized use of the Trademark, effectively claiming the quality, characteristics, and/or content of their counterfeited material are the Trademark products and/or the same as the Trademark products.

28.    Defendants knowingly engaged in a scheme to intentionally defraud Plaintiff out of sales and profits through Defendants' use and sales of inferior knock-off(s).

29.     In intentional furtherance of this scheme, Defendants used the Internet to disseminate Defendants' inferior knock-offs to end-users and consumers across the United State and in South Texas, and to enable end-users and consumers to purchase the counterfeit materials online.   The evidence of Defendants' use of the internet is largely if not uniquely within Defendants' possession, thus Plaintiff is presently unable to proffer specific prima facie proof other than that gleaned from screen-shots/images of Defendants' web page(s).

30.     In intentional furtherance of this scheme, the Defendants also used the U.S. Mail and/or other interstate carriers to ship counterfeit materials to purchasing end-users or consumers throughout the United States and South Texas.  The evidence of Defendants' use of the U.S. Mail and/or other interstate carriers is uniquely within Defendants' possession, thus Plaintiff is presently unable to proffer prima facie proof.

31.     Defendants' fraudulent activities described herein deceived consumers into believing their knock-off was a quality protein product like Plaintiff's products, goods, and services, and caused and enabled consumers to acquire, purchase, use, and accept the knock-off(s) instead of Plaintiff's products, goods, and services.

32.     As a direct and proximate cause of Defendants' schemes and fraudulent activities set forth herein, Plaintiff sustained injury to its business and property in the form of lost or diverted sales, competitive advantages, and goodwill in its Trademark.

33.     In 2013, Scholastic and SBF met with McAllen Independent School District's Assistant Superintendent of Curriculum, Sylvia Ibarra, and Instruction and discussed how Scholastic and SBF could and would utilize Plaintiff's protected property and how the assistant superintendent could and would assist Scholastic and SBF in promoting their infringing version(s) of Plaintiff's product/property.   From 2013 to the present, Scholastic and SBF have been encouraged, aided, and abetted schools, school districts, and other intermediaries to infringe on Plaintiff's property by among other things, assisting and guiding in the creating of counterfeit or knock-off products.

34.     Defendants engaged in trafficking of goods and services bearing counterfeit marks in violation of the law including, but not limited to, 18 U.S.C. § 2320.

**Defendants' Infringing Activities**

35.     Upon information and belief, Defendants are manufacturing, advertising, promoting, distributing, offering for sale, and/or selling the products and/or services bearing

marks and/or branding that is confusingly similar to and/or resembling the Springboards brand and Trademarks ("Counterfeit Products" or "Counterfeits") throughout at least Texas and most likely the United States.

36.     The breadth of Defendants' counterfeiting is extensive, as Defendants have sold at least thousands of pieces of Counterfeit Products.   Representative examples of Defendants' activities include, but are not limited to, the examples in Exhibit B.

37.     Upon information and belief, Defendants continue to offer the Counterfeit Products for sale.

38.     Defendants are not authorized and never have been authorized by Springboard to produce, manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing the Springboard brand and Trademarks, or any variations thereof.

39.     Upon information and belief, the Defendants' Counterfeit Products are of a quality substantially inferior to the Springboard brand and Trademarks.

40.     Upon information and belief, Defendants are aware of the extraordinary fame and strength of the Springboard brand and Trademarks, and the goodwill associated

therewith. Upon information and belief, Defendants had access to the Springboard brand and Trademarks prior to Defendants' creation and sale of the Counterfeit Products.

41.     Upon information and belief, Defendants are actively using, promoting, and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of Counterfeit Products with the knowledge that such goods will be mistaken for genuine Springboard Products.

42.     Upon information and belief, Defendants are conducting their counterfeiting and infringing activities within the United States.

43.     Defendants' use of unauthorized reproductions of Springboard brand and Trademarks in connection with the manufacturing, advertising, promoting, distributing, offering for sale, and/or selling of the Counterfeit Products is likely to cause confusion, deception, and mistake in the minds of consumers, the public, and the trade. Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between genuine Springboard Products and Defendants' Counterfeit Products.

44.     Defendants are engaging in the above-described illegal counterfeiting knowingly and intentionally or at least with reckless disregard or willful blindness to Springboard's rights for the purpose of trading on the goodwill and reputation of Springboard. If Defendants' intentional counterfeiting and infringing activities are not permanently enjoined by this Court, Springboard and the consuming public will continue to be damaged.

## Summary Allegations

45.     Plaintiff suffered injury to its business or property, and damages, including economic or financial damages, proximately caused by Defendants' unlawful actions, as further set forth with the required specificity under each count.

46.     The damages here are greater than just the sum of damages from each bad action considered in isolation, because purchases are made in consolidated form for convenience and cost savings, and therefore purchasing decisions based on either false assertions of exclusive rights to sell individual products or false assertions of origin, including the Trademarked items themselves, and exclusive components therein, have a multiplying effect.  As an example, individual schools may purchase any single or packaged item offered by Plaintiff directly from Plaintiff, but it is more convenient and less costly to purchase multiple or bulk offerings (of

Plaintiff) in or by a single district.  Also, many schools initially perform research, make their

initial decisions from whom to purchase their materials and initial stock, and then stay with that

source until motivated to do otherwise.

47.     Defendants' fraudulent scheme complained of here is fraud upon everyone.  It is

fraud upon the purchasers and end-users of the Trademarked products (the counterfeits

Defendants have conjured), because they are falsely told that Defendants' own government-

sanctioned patents and trademarks are otherwise authorized distributors.  It is fraud against the

providers (the schools and districts) of the Trademarked products, because they are led to believe

they are protected in their use and distribution of Counterfeits and are led to believe they can

promote the Counterfeits as their own.

48.     Springboard has no adequate remedy at law.

49.     Springboard is suffering irreparable injury and has suffered substantial

damages as a result of the Defendants' counterfeiting and infringing activities.

50.     The injuries and damages sustained by Springboard have been directly and

proximately caused by the Defendants' wrongful reproduction, use, manufacture, design,

distribution, advertisement, promotion, offering to sell, and sale of their Counterfeit Products.

## FIRST CLAIM FOR RELIEF

### (Trademark Counterfeiting — 15 U.S.C. § 1114)

51.     Springboard incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

52.     The registrations embodying the Springboard brand and Trademarks are in full force and effect, and the Springboard brand and Trademarks are entitled to protection under both federal law and common law.

53.     Defendant, without authorization from Springboard, has used and is continuing to use spurious designations that are identical to, or substantially indistinguishable from, the Springboard brand and Trademarks in interstate commerce.

54.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion and to deceive consumers, the public, and the trade into believing that Defendants' Counterfeit Products are genuine or authorized products of Springboard.

55.     Upon information and belief, Defendants have acted with knowledge of Springboard's ownership of the Springboard brand and Trademarks and with deliberate intention or reckless disregard to unfairly benefit from the incalculable goodwill inherent in the Springboard brand and Trademarks.

56.     Defendants' acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

57.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

58.     Upon information and belief, Defendants will continue its infringing acts, unless restrained by this Court.

59.     Defendants' acts have damaged and will continue to damage Springboard, and Springboard has no adequate remedy at law.

60.     In light of the foregoing, Springboard is entitled to and demands injunctive relief prohibiting Defendants from using the Springboard brand and Trademarks that are identical, substantially indistinguishable, and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorneys' fees, that Springboard has

sustained and will sustain as a result of such infringing acts, and all gains, profits, and

advantages obtained by Defendants as a result thereof, in an amount not yet known, as well

as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages

pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement — 15 U.S.C. § 1114)

61.    Springboard incorporates herein by reference the averments of the preceding

paragraphs as though fully set forth herein.

62.    The Springboard brand and Trademarks are nationally recognized, as being

affixed to goods and merchandise of the highest quality and originating with Springboard.

63.    The registration embodying the Springboard brand and Trademarks is in full

force and effect, and is entitled to protection under both federal law and common law.

64.    Defendants' unauthorized use of the Springboard brand and Trademarks in

interstate commerce and advertising of the same constitutes false designation of origin and a

false representation that the goods and services are manufactured, offered, sponsored,

authorized, licensed by or otherwise connected with Springboard, or come from the same

source as Springboard and are of the same quality as goods bearing the Springboard brand and Trademarks.

65.     Defendants' use of the Springboard brand and Trademarks is without Springboard's permission or authority and is in total and willful disregard of Springboard's rights to control its trademarks.

66.     Defendants' activities are likely to lead to and result in confusion, mistake, or deception and are likely to cause the public to believe that Springboard has produced, sponsored, authorized, licensed, or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Springboard.

67.     Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Springboard and reap the benefit of Springboard's goodwill associated with the Springboard brand and Trademarks.

68.     As a direct and proximate result of Defendants' willful and unlawful conduct, Springboard has been damaged and will continue to suffer damage to its business and

reputation unless Defendants are restrained by this Court from infringing the Springboard brand and Trademarks.

69.     Defendants' acts have damaged and will continue to damage Springboard, and Springboard has no adequate remedy at law.

70.     In light of the foregoing, Springboard is entitled to injunctive relief prohibiting Defendants from using the Springboard brand and Trademarks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorneys' fees, that Springboard has sustained and will continue to sustain as a result of such infringing acts, and all gains, profits, and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## **THIRD CLAIM FOR RELIEF**

### **(False Designations of Origin False Descriptions — 15 U.S.C. § 1125(a))**

71.     Springboard incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

72.     The Springboard brand and Trademarks are nonfunctional, inherently distinctive, and have achieved a high degree of consumer recognition and serve to identify Springboard as the source of high-quality goods to which the Springboard brand and Trademarks are well known and have gained fame across the country.

73.     Defendants' promotion, advertising, distribution, sale, and/or offering for sale of the Counterfeit Products is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of said products, and is intended, and is likely, to cause such parties to believe, in error, that the Defendants' Counterfeit Products have been authorized, sponsored, approved, endorsed, or licensed by Springboard, or that Defendants are in some way affiliated with Springboard.

74.     Defendants' use of the Springboard brand and Trademarks is without Springboard's permission or authority and is in total and willful disregard of Springboard's rights to control the Springboard brand and Trademarks.

75.     Defendants' acts have damaged and will continue to damage Springboard, and Springboard has no adequate remedy at law.

76.     In light of the foregoing, Springboard is entitled to injunctive relief prohibiting

Defendants from using the Springboard brand and Trademarks, or any marks confusingly

similar thereto, and to recover all damages, including attorneys' fees, that Springboard has

sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as

a result of their infringing acts alleged above in an amount not yet known, as well as the costs

of this action.


**FOURTH CLAIM FOR RELIEF**


**(Trademark Di1ution — 15 U.S.C. § 1125(e))**


77.     Springboard incorporates herein by reference the averments of the preceding

paragraphs as though fully set forth herein.


78.     The Springboard brand and Trademarks are strong and distinctive marks and

have achieved notoriety and widespread public recognition, and are thus "famous" within the

meaning of the Lanham Act.


79.     Defendants have used, in commerce, in connection with the sale of the

Counterfeit Products, unauthorized reproductions of the Springboard brand and Trademarks,

which are likely to cause, and most likely have caused, confusion or mistake as to the

affiliation, connection, or association between Defendants and Springboard, or as to the

origin, sponsorship, or approval of said Counterfeit Products by Springboard.

80.     Defendants' acts described above have diluted and continue to dilute the

unique and distinctive Springboard brand and Trademarks.  These acts violate the Lanham

Act, have injured and, unless immediately restrained, will continue to injure Springboard,

causing damage to Springboard in an amount to be determined at trial, as well as irreparable

injury to the goodwill and reputation associated with the Springboard brand and Trademarks.

81.     Upon information and belief, Defendants' unlawful actions began after the

Springboard brand and Trademarks became famous.

82.     Upon information and belief, Defendants acted knowingly, deliberately, and

willfully with the intent to trade on the reputation of Springboard, and to dilute the

Springboard brand and Trademarks.  Defendants' conduct is willful, wanton, and egregious.

83.     Springboard has no adequate remedy at law to compensate Springboard fully

for the damages that have been caused and which will continue to be caused to Springboard

by Defendants' unlawful acts, unless they are enjoined by this Court.

84.     In light of the foregoing, Springboard is entitled to injunctive relief prohibiting Defendants from using the Springboard brand and Trademarks, and to recover all damages, including attorneys' fees, that Springboard has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, as well as the costs of this action.

## FIFTH CLAIM FOR RELIEF

### (Texas Anti-Dilution Statute — Tex. Bus. & Com. Code § 16.103)

85.     Springboard incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

86.     The Springboard brand and Trademarks are claimed and explained as set forth above.

87.     Due to Springboard's extensive sales of products bearing the Springboard brand and Trademarks, and significant marketing and promotional activities of the Springboard brand and Trademarks, the Springboard brand and Trademarks have achieved widespread acceptance and recognition among the consuming public and the trade throughout the United States and abroad.

88.     Through Springboard's prominent, long, and continuous use in commerce, including commerce within Texas, the Springboard brand and Trademarks have become and continue to be famous and distinctive.

89.     Springboard's arbitrary and distinctive Springboard brand and Trademarks identify Springboard as the source/origin of the goods on which they appear.

90.     After the Springboard brand and Trademarks became famous, Defendant, without authorization from Springboard, began using marks that are confusingly similar to the Springboard brand and Trademarks.  Defendants' use of unauthorized reproductions of the Springboard brand and Trademarks dilutes and/or is likely to dilute the distinctive quality of those marks and to lessen the capacity of such marks to identify and distinguish Springboard's products. Defendants' unlawful use of the Springboard brand and Trademarks in connection with their inferior products also is likely to tarnish the Springboard brand and Trademarks and cause blurring in the minds of consumers between Springboard and Defendant, thereby lessening the value of the Springboard brand and Trademarks as unique identifiers of Springboard's products.

91.     By the acts described above, Defendants have caused and will continue to cause irreparable injury to Springboard's goodwill and business reputation, in violation of the Texas Anti-Dilution Statute, Tex. Bus. & Com. Code § 16.103.

92.     The acts of Defendants alleged in Paragraphs 1-62 above were committed willfully, with full knowledge of Springboards' rights and with the intention of deceiving and misleading the public and causing harm to Springboards.

93.     As a direct and proximate result of Defendants' unlawful acts, Springboards has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

94.     In light of the foregoing, Springboard is entitled to injunctive relief prohibiting Defendants from using the Springboard brand and Trademarks, and to recover all damages, including attorneys' fees, that Springboard has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## SIXTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement)

95.     Springboard incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

96.     Springboard owns all rights, title, and interest in and to the Springboard brand and Trademarks, including all common law rights in such marks.

97.     Defendant, without authorization from Springboard, has used and is continuing to use spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to the Springboard brand and Trademarks.

98.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' Counterfeit Products originate from, or are affiliated with, sponsored by, or endorsed by Springboard.

99.     Defendants' acts constitute trademark infringement in violation of the common law of the State of Texas.

100.    Upon information and belief, Defendants have profited from its unlawful actions and have been unjustly enriched to the detriment of Springboard. Defendants'

unlawful actions have caused Springboard damage in an amount presently unknown, but in an amount to be determined at trial.

101.     Springboard has been irreparably harmed and will continue to be irreparably harmed as a result of Defendants' unlawful acts unless Defendants are permanently enjoined from its unlawful conduct.

102.     Springboard has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

103.     Springboard incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

104.     By the acts described above, Defendants have engaged in unfair competition in violation of the common law of the State of Texas.

105.     Defendants' unlawful acts are causing great and irreparable injury to Springboard, and will continue to irreparably harm Springboard unless enjoined.

106.     Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Springboard. Defendants' unlawful actions have caused Springboard damage in an amount presently unknown, but in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

107.     WHEREFORE, Springboard respectfully prays that this Court enter judgment in its favor and against Defendants as follows:

108.     Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, are hereby temporarily, preliminarily, and permanently enjoined from using the Springboard brand and Trademarks, including, but not limited to: manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear the Springboard brand and Trademarks or any marks/designs identical, substantially indistinguishable, substantially similar, and/or confusingly similar thereto;

109.     Engaging in any other activity constituting unfair competition with Springboard, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements associated with Springboard;

110.     Engaging in any other activity that would dilute the distinctiveness of the Springboard brand and Trademarks; and

111.     Committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Springboard;

112.     Ordering Defendants to recall from any distributors and retailers, and to deliver to Springboard for destruction or other disposition all remaining inventory of Counterfeit Products, or other printed/published material bearing the Springboard brand and Trademarks, or any marks confusingly similar or substantially similar thereto, including all advertisements, promotional and marketing materials therefore, as well as the means of making the same;

113.    Ordering Defendants to file with this Court and serve on Springboard within ten (10) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

114.    Ordering Defendants to disclose their supplier(s) and manufacturer(s) of the Counterfeit Products and provide all documents, correspondence, receipts, and invoices associated with the purchase of the Counterfeit Products;

115.    Ordering an accounting by Defendants of all gains, profits, and advantages derived from their wrongful acts;

116.    Awarding Springboard all of Defendants' profits and all damages sustained by Springboard as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b);

117.    Awarding treble damages in the amount of Defendants' profits or Springboard's damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

118.    Awarding applicable interest, costs, disbursements, and attorneys' fees pursuant to 15 U.S.C. § 1117(b) and 17 U.S.C. § 505;

119.    Awarding Springboard statutory damages pursuant to 15 U.S.C. §1117(c) and 17 U.S.C. § 504(c);

120.    Awarding Springboard punitive damages in connection with its state law claims, on account of Defendants' willful misconduct and fraud and deceit upon the public; and

121.    Awarding any other injunctive and other equitable relief, under federal civil-RICO and any other remedies authorized by law.

122.    Such other relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Springboard hereby demands a trial by jury of all claims in this litigation.

Dated: January 6, 2017                              Respectfully Submitted,

                                                    **DELEON LAW GROUP PC**

ORIGINAL COMPLAINT                                  PAGE 32

RUBEN C. DELEON
STATE BAR NO. 00790577
15851 DALLAS PARKWAY
SUITE 600
ADDISON, TEXAS 75001
TELEPHONE:  214-561-8687
FACSIMILE:   877-488-8983

**ATTORNEY FOR PLAINTIFF
SPRINGBOARDS TO
EDUCATION, INC.**