UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SPRINGBOARDS TO EDUCATION, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:17-CV-0054-B |
| SCHOLASTIC BOOK FAIRS, INC., SCHOLASTIC CORPORATION, and HOUGHTON MIFFLIN HARCOURT PUBLISHING CO., | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

In this suit, Springboards to Education, Inc. (SE) has raised various federal and Texas trademark claims against Scholastic Book Fairs, Inc., Scholastic Corporation, and Houghton Mifflin Harcourt Publishing Co.[1] Scholastic and HMH have now filed separate motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court **GRANTS** Scholastic's motion and **GRANTS IN PART** and **DENIES IN PART** HMH's.

---

[1] The Court will refer to Scholastic Book Fairs, Inc. and Scholastic Corporation as "Scholastic" and Houghton Mifflin Harcourt Publishing Co. as "HMH."

- 1 -

# I.

# BACKGROUND

A.      *Factual Background*[2]

SE sells "reading programs and related educational products." Doc. 38, Am. Compl., ¶ 2. SE's products include "incentives, literacy growth tracking records and data assessment" backed by SE's independent research. *Id.* ¶ 27. SE has registered the following trademarks in connection with its reading-related products: MILLIONAIRE READER, MILLION DOLLAR READER, MILLIONAIRE'S READING CLUB, and READ A MILLION WORDS.[3] *Id.* ¶ 16. As a result of its marketing efforts and the exceptional quality of its products, SE claims to "enjoy[] strong consumer loyalty, recognition, and goodwill in the educational field and its related marketplace," *id.* ¶ 2, and that its registered marks "have acquired enormous values and recognition," *id.* ¶ 22.

Scholastic and HMH are also in the educational products business and, like SE, sell reading-related products. Relevant here is the Read 180 program Scholastic created and eventually sold to HMH. *Id.* ¶ 23. The read 180 program provides students with incentives to read a million words and celebrates students that read million words. *Id.* ¶ 28. "Concealed" within the Read 180 program, SE alleges, are marks confusingly similar to its own such as MILLION WORDS CLUB and MILLION WORDS READER. *Id.* ¶ 23. SE claims that Scholastic and HMH's use of marks similar to SE's marks on products similar to SE's products has confused consumers and harmed SE. *Id.* ¶¶ 3–4.

---

[2] The Court draws the following from SE's First Amended Complaint. Doc. 38, Am. Compl.

[3] SE included in Exhibit A to its Amended Complaint a registration in its name for the FEEL LIKE A MILLION BUCKS mark. Doc. 38, Am. Compl. Ex. A. But none of SE's allegations pertain to that mark.

*B.     Procedural Background*

SE filed this suit on January 1, 2017, Doc. 1, Compl., and its First Amended Complaint on August 1, 2017, Doc. 38, Am. Compl. In its amended complaint SE alleged seven causes of action, all arising from the Scholastic's and HMH alleged infringement of SE registered marks: (1) trademark counterfeiting under 15 U.S.C. § 1114; (2) trademark infringement under 15 U.S.C. § 1114; (3) false designation of origin and false description under 15 U.S.C. § 1125(a); (4) trademark dilution under 15 U.S.C. § 1125(e); (5) trademark dilution under Tex. Bus. & Com. Code § 16.103; (6) trademark infringement under Texas common law; and (7) unfair competition under Texas common law. Doc. 38, Am. Compl., ¶¶ 70–125. SE seeks injunctive relief and damages. *Id.* ¶¶ 126–41.

Scholastic and HMH have filed separate motions to dismiss, which are ripe for review. Doc. 47, Scholastic's Mot. to Dismiss; Doc. 49, HMH's Mot. to Dismiss.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When analyzing rule 12(b)(6) motions, courts generally consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). During this review, factual allegations must be viewed "in the light most favorable to the plaintiffs." *Kopp v. Klien*, 722 F.3d 327, 333 (5th Cir. 2013). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) motions turn on whether a complaint contains "enough facts to state a claim

to relief that is plausible on its face." *Id.* at 570. Facially plausible complaints "allege 'more than labels and conclusions'" and contain enough factual allegations "'to raise a right to relief above the speculative level.'" *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). If the allegations lack sufficient detail, "this basic deficiency should . . . be exposed" before the parties and court spend unnecessary time and resources on the case. *Twombly*, 550 U.S. at 558.

## III.

## ANALYSIS

Scholastic and HMH have filed separate motions to dismiss. The court will address each in turn.

*A.    Scholastic's Motion to Dismiss*

Scholastic has moved to dismiss SE's counterfeiting claim, federal dilution claim, and Texas dilution claim with prejudice.

1.    Counterfeiting

To plead a trademark-counterfeiting claim, a plaintiff must allege that a defendant counterfeited or used a counterfeit of the plaintiff's registered mark. 11 U.S.C § 1114(1). A counterfeit is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *Id.* § 1127. Although the Fifth Circuit has not clarified the definition of "famous mark," "the Second Circuit has stated that an allegedly counterfeit mark must be compared with the registered mark as it appears on actual merchandise to an average purchaser." *Waiter.com v. Waitr, Inc.*, 2:16-cv-01941, 2016 WL 7443656, at *4 (W.D. La. Dec. 22, 2016) (quoting *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007)). The question

is "whether an average consumer would notice any difference between the two marks." *Waiter.com*, 2016 WL 7443656, at *4. One commentator has described trademark infringement as "an aggravated form of trademark infringement . . . [involving] producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012). Proving a defendant intentionally counterfeited or used a counterfeited mark entitles the plaintiff to treble damages. 15 U.S.C. § 1117(b). Scholastic contends that SE's counterfeiting claim fails because SE has failed to plead that any of the marks it accuses are "identical with, or substantially indistinguishable from" SE's registered marks. Doc. 48, Scholastic's Mot. to Dismiss Br., 7.

The Court agrees with Scholastic. SE has registered the following marks: MILLIONAIRE READER, MILLION DOLLAR READER, MILLIONAIRE'S READING CLUB, and READ A MILLION WORDS. Doc. 38, Am. Compl., ¶ 16. And SE claims that the following marks used by Scholastic are counterfeits of those marks: MILLION WORDS CLUB and MILLION WORDS READER. *Id.* ¶ 23. The marks SE accuses are simply not identical to or substantially indistinguishable from SE's marks. An average consumer could certainly tell the difference between SE's marks and the marks SE has said are counterfeits.

SE relies on the statute's "substantially indistinguishable"[4] language of the statute, contending that Scholastic's marks need not be absolutely identical to its own to be counterfeits. Doc. 52, Resp.

---

[4] SE argues also that Scholastic's marks are counterfeits based on the application of the factors courts apply to determine likelihood of confusion in trademark-infringement cases. Doc. 52, Resp. to Scholastic, 2. But the likelihood-of-confusion factors are not relevant to the counterfeiting question because the standard for determining whether a mark is a counterfeit is more stringent that the likelihood-of-confusion standard. *See Santana-Cuesta*, 2016 WL 9459759, at *6; *It's a 10, Inc. v. Beauty Elite Grp.*, No. 13-60154-CIV, 2013 WL 6834804, at *11 (S.D. Fla. Dec. 23, 2013); 4 McCarthy on Trademarks & Unfair Competition § 25:10 (5th ed.).

to Scholastic, 2. But SE fails to argue why the alleged counterfeits are substantially indistinguishable enough from its marks; it cites no caselaw supporting its position that mere similarity or even strong similarity makes a mark a counterfeit. Indeed, the weight of the caselaw indicates that a mark may be very similar to another mark without being a counterfeit.[5] As a district court in California noted, "virtually identical is not the same as 'identical with, or substantially indistinguishable from.'" *Playvision Labs, Inc. v. Nintendo of Am., Inc.*, No. C14-05365 CRB, 2015 WL 12941892, at *1 (N.D. Cal. May 18, 2015) (quoting 15 U.S.C. § 1127). At most, the accused marks are "virtually identical" to SE's marks. SE thus cannot plausibly allege that Scholastic's marks are counterfeits. Therefore, the Court **GRANTS** Scholastic's motion to dismiss for failure to state a claim and **DISMISSES WITH PREJUDICE** SE's counterfeiting claim.

2. Federal Dilution

Federal law authorizes suits against those believed to have diluted famous marks. 15 U.S.C. § 1125(c). But dilution claims are available only to those who own "famous" marks. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 548 (5th Cir. 2015). To be famous, a mark must be

> widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

---

[5] *See, e.g.*, *Waiter.com*, 2016 WL 7443656, at * 4; *Santana-Cuesta v. Moldonado-Vargas*, Civil No. 14-1456 (CCC/BJM), 2016 WL 9459759, at *6 (D.P.R. Jan. 29, 2016); *Playvision Labs, Inc. v. Nintendo of Am., Inc.*, No. C14-05365 CRB, 2015 WL 12941892, at *1 (N.D. Cal. May 18, 2015); *Interplay Ent. Corp. v. TopWare Interactive, Inc.*, No. CV 10-07168 DMG (JCGx), 2012 WL 13005845, at *3–4 (N.D. Cal. Apr. 13, 2012); *Emeco Indus., Inc. v. Restoration Hardware, Inc.*, No. 12-5072 MMC, 2012 WL 6087329, at *1 (N.D. Cal. Dec. 6, 2012); *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp 2d 457, 471–72 (S.D.N.Y. 2011).

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

§ 1125(c)(2)(A).[6] Another district court in this circuit has noted that "[o]ne of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie dolls, and the like." *Bd. of Regents, Univ. of Tex. Sys. ex rel. Univ. Tex. at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008). Other examples of famous marks include the JUST DO IT Nike slogan, the STARBUCKS mark, the MCDONALD'S mark, and the PEPSI mark. 4 McCarthy on Trademarks and Unfair Competition § 24:107 (5th ed.). A famous mark is a "household name" that "the general public . . . associates . . . at least initially . . . with the mark's owner." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012). And given that the TDRA of 2006 narrowed the definition of famous to include only marks "widely recognized by the general consuming public of the United States," fame only in a limited geographic area or niche market will not support a federal dilution claim. *KST Elec.*, 550 F. Supp. 2d at 673 n.13.

Scholastic contends that SE's federal dilution claim fails because SE has insufficiently pleaded that any of its allegedly diluted marks are famous. Doc. 48, Scholastic's Mot. to Dismiss Br., 9. SE

---

[6] The Trademark Dilution Revision Act of 2006 added this definition to the Lanham Act. Trademark Dilution Revision Act, Pub. L. No. 109-312, § 2, 120 Stat. 1730, 1730–31 (2006).

responds that it "amply" alleged the presence of the factors the TDRA says courts can consider to determine whether a mark is famous. Doc. 52, Resp. to Scholastic, 1.

The Court begins by noting that alleging facts about the topics covered by each of the factors is insufficient to state a federal dilution claim. The point of the factors is to aid courts in determining whether a mark is "widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(A). Thus, when a party relies on the factors to guide its pleadings, it must not only plead facts about the topics covered by the factors but do so in a way that makes plausible the conclusion that the party's mark is "widely recognized by the general consuming public of the United States." *Id.*

SE's pleadings do not make plausible that its marks are "widely recognized by the general consuming public of the United States." First, SE alleges that it "enjoys strong consumer loyalty, recognition, and goodwill in the educational field and its related marketplace." Doc. 38, Am. Compl., ¶ 2, and that it has advertised its marks by attending "conventions, fairs, conferences and other similar education industry convergence events," *id.* ¶ 30. But this allegation indicates reputation only within a specific market. Such "niche fame" does not support a federal dilution claim because "the general consuming public," not a particular market, must widely recognize a mark for the mark to be famous. 15 U.S.C. § 1125(c)(2)(A); *KST Elec.*, 550 F. Supp. 2d at 673 n.13. SE has asserted also that it has marketed the products bearing its trademarks using "on-line media." Doc. 38, Am. Compl., ¶ 30. But asserting that SE used internet marketing is simply to vague of an allegation to make plausible that SE's marks are famous in the sense a federal dilution claim requires.

Second, SE alleges that it "began offering to sell, marketing and selling products and services bearing the Springboard Trademarks at least as early as 2005," *id.* ¶ 19, and that "[o]rdinary

customers immediately began associating the Trademarks with Springboards and the quality and character associated with Springboards," *id.* ¶ 27. But these allegations indicate nothing about the geographic scope or volume of SE's sales of its trademarked products or who has been purchasing SE's products. These allegations therefore do not make plausible that SE's marks are "widely recognized by the general consuming public of the United States."

Third, SE alleges that its marks have "have acquired enormous value and recognition in the United States and elsewhere throughout the world" and that

> Consumers, potential customers, and other members of the public not only associate the Springboard brand and Trademarks with exceptional materials, style and workmanship approved by Springboard, but also recognize that goods and services bearing the springboard brand and Trademarks originate exclusively with Springboard.

*Id.* But although SE asserts broad geographic fame in this allegation, the allegation says nothing about general recognition by the public. The Court cannot tell who these "other members of the public" are or how many of them there are. SE must make plausible that the "general consuming public" knows its marks, not just that school administrators and educators do. The allegation is also conclusory; it contains no facts making plausible that "the general consuming public of the United States" would recognize its marks.

Fourth, SE alleges that it has sold "hundreds of thousands of dollars of goods and services" bearing its names and trademarks. *Id.* ¶ 21. But this allegation does not make SE's claim plausible because it indicates nothing about the breadth of the geographic area in which the sales occurred nor the nature of the purchasers. The allegation does not make plausible the broad fame a federal dilution claim requires.

Finally, SE pleads that its marks are registered. *Id.* ¶ 1. But although registration is relevant to whether to whether a mark is famous, alleging registration alone cannot make a mark's fame plausible because many marks are registered no one would consider famous.

In sum, SE has not alleged enough detail in its complaint to make plausible that the fame of its marks is on par with the fame of the Nike JUST DO IT mark, the BUDWEISER beer mark, or other similar marks. The Court thus **GRANTS** Scholastic's motion and **DISMISSES WITH PREJUDICE** SE's federal dilution claim.

3. Texas Dilution

Under Texas law, "the owner of a mark that is famous and distinctive . . . in this state is entitled to enjoin another person's commercial use of a mark . . . if use of the mark . . . is likely to cause the dilution of the famous mark." Tex. Bus. & Com. Code § 16.103(b). A mark is famous under Texas law if it

> is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner. In determining whether a mark is famous, a court may consider factors including:
>
> (1) the duration, extent, and geographic reach of the advertisement and publicity of the mark in this state, regardless of whether the mark is advertised or publicized by the owner or a third party;
>
> (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark in this state;
>
> (3) the extent of actual recognition of the mark in this state; and
>
> (4) whether the mark is registered in this state or in the United States Patent and Trademark Office.

§ 16.103(b). Scholastic contends that SE's Texas dilution claim fails because SE has failed to plead

that any of SE's marks are famous. Doc. 48, Scholastic Mot. to Dismiss Br., 10.

The Court agrees. SE's Texas dilution claim fails for the same reason its federal dilution claim fails. Although SE pleads that it has marketed and sold its trademarked products in Texas, SE's allegations fail to make plausible that the Texas public recognizes its marks. At best, SE's allegations might establish niche fame, but niche fame is just as insufficient under Texas law as under federal law.[7] The Court thus **GRANTS** Scholastic's motion and **DISMISSES WITH PREJUDICE** SE's Texas dilution claim.

B.  *HMH's Motion to Dismiss*

HMH has moved to dismiss (1) all of SE's claims because SE's complaint does not provide fair notice to HMH; (2) SE's counterfeiting claim (claim 1) because SE failed to plead that any accused mark is a counterfeit; (3) SE's state and federal dilution claims (claims 4 and 5) because SE has failed to plead its marks are famous; (4) SE's federal trademark-infringement claims (claims 2 and 3) because SE failed to allege that HMH used any accused mark in commerce; (5) SE's state and federal trademark-infringement claims (claims 1, 2, 3, 6, and 7) because SE failed to plead likelihood of confusion; and (6) all of SE's claims based on Texas statutes of limitations and laches.

1.  Fair Notice to HMH

SE asserts causes of action against both Scholastic and HMH. Doc. 38, Am. Compl., ¶ 23. Thus, SE's pleadings must indicate a plausible right to relief as to both Scholastic and HMH. HMH

---

[7] *Bulbs 4 Ea. Side, Inc. v. Ricks*, 199 F. Supp, 3d 1151, 1172 (S.D. Tex. 2016) (noting that, after 2012 amendments, the Texas dilution standard is "substantially consistent with federal law"); Tex. Acts 2011, 82nd Leg., ch. 563 (H.B. 3141), § 3 ("The intent of this Act is to provide a system of trademark registration and protection in this state that is substantially consistent with the federal system of trademark registration and protection under the Trademark Act of 1946, as amended. To that end, the construction given to the Trademark Act of 1946 (15 U.S.C. Section 1051 et seq.) should be examined as persuasive authority for interpreting and construing this Act.").

argues that SE has failed to state plausible claims against HMH. Doc. 50, HMH Mot. to Dismiss Br., 6.

The Court disagrees with HMH. SE accuses the Read 180 program of violating SE's trademark rights because the program contains marks similar to SE's registered marks. Doc. 38, Am. Compl., ¶ 23. Scholastic created the Read 180 program but sold the program to HMH. *Id.* With respect to HMH, SE pleads that the Read 180 program continued to contain infringing marks after HMH purchased it. *Id.* Thus, if SE's pleadings make plausible that the Read 180 program contains infringing marks, SE's claims against HMH can proceed.

2. Trademark Claims

    *a.    Use in Commerce*

To prevail on a trademark-infringement claim, a plaintiff must prove that the defendant used the plaintiff's mark in commerce. 15 U.S.C. § 1114(1). The Lanham Act defines "use in commerce" as "bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." A mark is used in commerce "on goods" if

> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce.

15 U.S.C. § 1127. HMH argues that SE failed to plead that HMH used any potentially infringing mark in commerce. Doc. 50, HMH Mot. to Dismiss Br., 8.

The Court disagrees with HMH. SE alleges that HMH markets and sells the Read 180 program and that the Read 180 program bears marks that allegedly infringe SE's trademark rights.

Doc. 38, Am. Compl., ¶ 23. But the allegedly infringing marks are contained only within the Read 180 program; unclear from SE's pleadings is whether HMH used the allegedly infringing marks to market the Read 180 program to initial customers.

The allegedly infringing marks' invisibility to initial purchasers does not doom SE's complaint. Post-sale confusion can support a trademark claim. *See Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 221 (5th Cir. 1985) ("[Plaintiff] need not prove confusion on the part of actual customers."); *Mastercrafters Clock & Radio v. Vacheron & Constantin-LeCoultre Watches, Inc.*, 221 F.2d 464, 466–67 (2d Cir. 1955) (finding confusion on the part of observers of a product rather than actual purchasers to support trademark-infringement claim); McCarthy, *supra* § 23:7 (5th ed.) (discussing trademark claims based on post-sale confusion). And SE has alleged that users of the Read 180 program other than the initial purchaser are confused by the program's use of marks similar to SE's registered marks. Doc. 38, Am. Compl., ¶ 35. Thus, SE has sufficiently pleaded that HMH used allegedly infringing marks in commerce.

    b. *Counterfeiting*

Because SE's counterfeiting claim against HMH accuses the same marks as SE's counterfeiting claim against Scholastic, the Court **GRANTS** HMH's motion and **DISMISSES WITH PREJUDICE** SE's counterfeiting claim for the same reasons the Court dismissed SE's counterfeiting claim against Scholastic.

    c. *Likelihood of Confusion*

SE's federal trademark-infringement claim and its Texas common-law trademark-infringement and unfair-competition claims require SE to show that HMH's use of the allegedly infringing marks likely confuses consumers about the origin of goods bearing the allegedly infringing

marks. 15 U.S.C. § 1114(1); *Am. Rice, Inc. v. Prods. Rice Mill, Inc.* 518 F.3d 321, 329 (5th Cir. 2008); *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ). Courts consider a non-exhaustive list of eight factors to determine whether a party has established likelihood on confusion. The factors include "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice*, 518 F.3d at 329 (quoting *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir.1986)). But "[t]he absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors." *Id.* (quoting *Conan Props, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)). HMH contends that SE's pleadings do not make likelihood-of-confusion plausible. Doc. 50, HMH Mot. to Dismiss Br., 13.

The Court disagrees with HMH. Regardless of whether SE's pleadings constitute a strong showing of all the likelihood-of-confusion factors, SE's pleadings make likelihood of confusion plausible. As to the strength of its mark, SE pleaded that it has used its marks since 2005, spent substantial resources marketing products bearing the marks, maintained strict quality control standards, and sold hundreds of thousands of dollars of products bearing the marks. Doc. 38, Am. Compl., ¶¶ 19–22. SE has pleaded also that the allegedly infringing marks are similar to its own, highlighting the similarities between the MILLION WORDS CLUB and MILLION WORDS READER marks used by Scholastic and HMH and SE's own MILLIONAIRE READER, MILLION DOLLAR READER, MILLIONAIRE'S READING CLUB, and READ A MILLION WORDS marks. *Id.* ¶¶ 23, 41. And SE alleges that its products and marketing are similar, pleading that both

it and HMH sell educational products designed to improve students' reading abilities and that it and HMH both market using internet media and by attending many of the same industry conferences. *Id.* ¶¶ 23, 28–30. Next, as to HMH's intent in adopting the allegedly infringing marks, SE pleads that the defendants are well-aware of SE's marks because it and the defendants have cosponsored literacy events and attended many of the same conferences, at which SE has presented its programs bearing its marks. *Id.* ¶¶ 31–34. SE alleges also that consumers have actually been confused by the allegedly infringing marks, pleading that, after it began to enforce its trademark rights, customers have called SE to determine whether products they purchased came from SE or from an alleged infringer. *Id.* ¶ 35. These pleadings make likelihood of confusion plausible. Thus, the Court declines to dismiss any of SE's claims on the ground that SE inadequately alleged likelihood of confusion.

    e.  *Dilution*

SE's federal and Texas dilution claims against HMH fail for the same reasons as the dilution claims against Scholastic failed. Thus, the Court **GRANTS** HMH's motion and **DISMISSES WITH PREJUDICE** SE's dilution claims.

    d.  *Statute of Limitations*

The Lanham Act includes no statute of limitations for trademark claims. *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 356 (5th Cir. 2011). But courts have recognized that the laches defense is available against plaintiffs who have waited too long to file federal trademark suits. 4 McCarthy on Trademarks & Unfair Competition, § 31:33 (5th ed.). To prevail on a laches defense, a defendant must show "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Westchester Media v. PRL Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000). A defendant can raise laches in a motion to dismiss, but a court

should not grant a motion to dismiss based on laches unless the complaint affirmatively shows the claim is barred. *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958).

Unlike Lanham Act claims, Texas law contains a statute of limitations for common-law trademark claims. Federal courts have applied Texas's four-year statute of limitations to trademark-infringement claims and Texas's two-year statute of limitations to unfair-competition claims based on trademark infringement. *Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*, 934 F. Supp. 796, 804–06 (S.D. Tex. 1996) (citing Tex. Civ. Prac. & Rem. Code §§ 16.003–.004). That said, Texas law treats trademark-infringement as a "continuing tort," which means the cause of action does not accrue until the allegedly wrongful conduct ends. *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 812 (Tex. App.—Austin 2001, pet. denied). But, like under federal law, defendants may rely on laches as an affirmative defense against plaintiffs who have filed suit inappropriately late. *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 758 (Tex. App.—Dallas 2012, no pet.).

The Court declines to dismiss SE's complaint based on the statute of limitations or laches. As to the statute-of-limitations, trademark infringement is clearly a continuing tort in Texas, and SE has alleged that the defendants have not stopped violating its trademark rights. Thus, the Court cannot dismiss SE's Texas claims based on the statute of limitations. Nor will the Court dismiss SE's claims based on laches. Because SE has pleaded that the defendants intentionally violated its trademark rights, Doc. 38, Am. Compl., ¶ 31, and that the defendants' allegedly wrongful conduct was concealed, *id.* ¶ 23, SE's pleadings do not affirmatively establish that laches bars SE's claims against HMH. *Bright Response, LLC v. Google, Inc.*, 730 F. Supp. 2d 610, 623 (E.D. Tex. 2010) ("Where a party attempting to assert laches attempted to conceal its infringement from the patentee

or the public, delay considered for laches begins when patentee gains actual knowledge of the alleged infringement.") (citing *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997)); *Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco v. MGM Mirage*, No. 08cv03157(HB), 2008 WL 4974800, at *6 (S.D.N.Y. Nov. 24, 2008) (finding that allegation of intentional infringement precluded dismissal based on laches).

## IV.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Scholastic's and HMH's motions to dismiss as follows.

1. The Court GRANTS Scholastic's motion to dismiss SE's counterfeiting and dilution claims and therefore DISMISSES WITH PREJUDICE[8] SE's counterfeiting and dilution claims against Scholastic.

2. The GRANTS HMH's motion to dismiss SE's counterfeiting and dilution claims and therefore DISMISSES WITH PREJUDICE SE's counterfeiting and dilution claims against HMH.

3. The COURT DENIES HMH's motion to dismiss SE's remaining claims against it.

---

[8] SE has already amended its complaint once. Doc. 1, Compl.; Doc. 38, Am. Compl. The Court finds that allowing SE to further amend its counterfeiting and dilution claims would be futile and therefore dismisses SE's counterfeiting and dilution claims with prejudice. *Russell v. Dall. Ind. Sch. Dist.*, No. 3:10-CV-0724-B, 2010 WL 4065532, at *2 (N.D. Tex. Oct. 14, 2010).

SO ORDERED.

SIGNED: April 17, 2018.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE